Filed 7/5/22  P. v. Ortega CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>JAIME ORTEGA,<br><br>　　Defendant and Appellant. | B312561<br><br>(Los Angeles County<br>Super. Ct. No. KA053938) |

APPEAL from an order of the Superior Court of Los Angeles County.  Juan Carlos Dominguez, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Jaime Ortega appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] A jury previously convicted Ortega of two counts of attempted murder in violation of sections 664 and 187, subdivision (a), and one count of murder in violation of section 187, subdivision (a). We affirmed those convictions on direct appeal. (*People v. Juan C. Rodriguez et. al.* (Aug. 18, 2004, B160212) [nonpub. opn.] (*Rodriguez*).)

The trial court denied Ortega's petition for resentencing these convictions at the prima facie stage, without appointing counsel, after finding Ortega ineligible for relief under section 1170.95 as a matter of law. The trial court determined that the record of conviction established that Ortega was the actual killer on the murder conviction and that section 1170.95 relief did not apply to the attempted murder convictions. Ortega timely appealed.

We affirm as to the murder conviction. The record shows that Ortega is not eligible for resentencing of his murder conviction as a matter of law because he was the actual killer. The error committed by the trial court in not appointing Ortega counsel, as required by *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), was harmless.

We reverse as to the attempted murder convictions. Since the trial court's decision, the Governor signed into law Senate Bill No. 775 (2020–2021 Reg. Sess.). Effective January 1, 2022, Senate Bill No. 775 amended section 1170.95 to include

---

[1] Undesignated statutory references herein are to the Penal Code.

individuals convicted of attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 2.) We remand for further proceedings on Ortega's attempted murder convictions.

## BACKGROUND

**A. Factual Background**

These facts are taken from our 2004 decision affirming Ortega's conviction. (*Rodriguez*, *supra*, B160212.)[2] "Rodriguez and Ortega are members of the El Monte Flores gang. . . . [¶] On August 30, 2001, [at approximately 1:00 a.m.] Ortega drove Rodriguez and two other confederates in a Chevrolet Lumina. . . . Someone in Rodriguez's vehicle shot five or six times, hitting and critically injuring Tapia." (*Id*. at p. 2.)

"On August 30, 2001, at approximately 2:00 a.m., Rodriguez and Ortega were passengers in the same Chevrolet Lumina that they were in an hour earlier. Rodriguez yelled 'Northside Bolen' to Robert Garcia and Eva Ruiz, who were sitting outside a donut shop. Garcia responded 'Northside Monte.' The driver of the Chevrolet Lumina made a u-turn and Rodriguez and Ortega exited the vehicle. Garcia was shot fatally. Ortega was holding a gun." (*Rodriguez*, *supra*, B160212 at p. 3.)

"A jury found both Ortega and Rodriguez guilty of murder and two counts of attempted murder. The jury found the allegation that a principal personally and intentionally discharged a firearm to be true with respect to each crime and that the discharge caused great bodily injury to Tapia and great

---

[2] We grant Ortega's unopposed request to take judicial notice of our prior opinion. (Evid. Code, §§ 452, subd. (d), 459.)

bodily injury and death to Garcia. The jury found that Ortega personally and intentionally discharged a firearm which caused great bodily injury and death to Robert Garcia." (*Rodriguez, supra*, at p. 6.)

"The court sentenced both Ortega and Rodriguez to three indeterminate terms of 25 years to life, plus two life terms, each with the possibility of parole, plus a twenty-year determinate term." (*Rodriguez, supra*, at p. 7.)

The record on appeal contains the jury's verdict, which, in relevant part, states: "We further find the allegation that said defendant, JAIME ORTEGA personally and intentionally discharged a firearm, a handgun, which proximately caused great bodily injury and death to ROBERT GARCIA within the meaning of Penal Code Section 12022.53(d) to be TRUE."

## B. Procedural Background

In 2004, this court affirmed the judgment of convictions. (*Rodriguez, supra*, B160212.)

In 2018, the Legislature passed and the Governor approved Senate Bill No. 1437 (2017–2018 Reg. Sess.), which came into effect January 1, 2019. Section 1170.95 was enacted as part of the legislative changes effected by Senate Bill No. 1437. (Stats. 2018, ch. 1015, § 4.)

In March 2021, Ortega filed a petition for resentencing pursuant to section 1170.95. In April 2021, the trial court denied the petition at the prima facie stage without appointing counsel. The court found Ortega was ineligible for relief as a matter of law. Ortega filed a timely notice of appeal.

In October 2021, while this appeal was pending, the Governor signed into law Senate Bill No. 775 (2020–2021 Reg. Sess.). Effective January 1, 2022, Senate Bill No. 775 amends section 1170.95 to cover certain attempted murder convictions. (Stats. 2021, ch. 551, § 2.) Both parties addressed Senate Bill No. 775's effect on this matter in their briefing.

## C. Request for Judicial Notice and Jury Instructions

Ortega has filed a request for judicial notice requesting that we take notice of the direct appeal filed in *People* v. *Juan C. Rodriguez et al., supra*, B160212. We grant that request.[3] That file contains jury instructions relevant to Ortega's arguments in this appeal.

First, it contains an instruction to the jury on attempted murder on a natural and probable consequences theory.

Second, it contains a jury instruction titled "Intentional and Personal Discharge of Firearm/Great Bodily Injury," which states in relevant part: "It is alleged [in Count[s] 4] that the defendant[s] Jaime Ortega intentionally and personally discharged a firearm [and [proximately] caused [death] to a person] [other than an accomplice] during the commission of the crime[s] charged. [¶] If you find the defendant[s] Jaime Ortega guilty of [one or more] of the crime[s] thus charged, you must determine whether the defendant[s] Jaime Ortega intentionally and personally discharged a firearm [and [proximately] caused

---

[3] We grant Ortega's unopposed request to take judicial notice of the record in case No. B160212. (Evid. Code, § 459; Cal. Rules of Court, rule 8.252(a).) The trial court took judicial notice of the record in case No. B160212.

[death] to a person] [other than an accomplice] in the commission of [that] [felony]."

Third, under the title of "Intentional and Personal Discharge of Firearm/Great Bodily [Injury] by a Principal," it reads: "It is alleged [in Count[s] 2, 3 & 4 ] that a principal intentionally discharged a firearm [and [proximately] caused [great bodily injury] [or] [death] to a person] [other than an accomplice] during the commission of the crime[s] charged. [¶] If you find the defendant[s] guilty of [one or more of] the crime[s] thus charged, you must determine whether a principal intentionally discharged a firearm [and [proximately] caused [great bodily injury] [or] [death] to a person][other than an accomplice] in the commission of [that] [those] [felony] [felonies]."

Finally, there is an instruction on the definition of "principals," stating: "Persons who are involved in [committing] [or] [attempting to commit] a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include:

1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or

2. Those who aid and abet the [commission] [or] [attempted commission] of the crime."

## DISCUSSION

### A. Applicable Law

On January 1, 2019, Senate Bill No. 1437 took effect " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless

6

indifference to human life.' " (*Lewis, supra,* 11 Cal.5th at p. 959.) Senate Bill No. 1437 amended sections 188 and 189 and added section 1170.95, which provides a procedure for individuals convicted of murder who could not be convicted under the law as amended to retroactively seek relief. (*Lewis, supra,* 11 Cal.5th at p. 957.)

Section 1170.95 also created a procedure whereby individuals convicted of murder under the now-invalid natural and probable consequences doctrine or felony murder rule may petition to vacate their convictions and to be resentenced. First, it created a three-part eligibility test: (1) the defendant must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or under the natural and probable consequences doctrine; (2) the defendant must have been convicted of first or second degree murder; and (3) the defendant could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill No. 1437. (§ 1170.95, subd. (a).)

Next, it required that a petition for relief under section 1170.95 must include a declaration that the petitioner is eligible for relief based on meeting these above requirements, the superior court case number, the year of conviction, and a statement as to whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1)(A)–(C).) "Where the petition complies with section 1170.95 subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis, supra,* 11 Cal.5th at p. 960, citing § 1170.95, subd. (c).)

7

If the court determines the petitioner has made a prima facie showing of eligibility for relief, it must issue an order to show cause. (§ 1170.95, subd. (c).) If the parties do not stipulate that the petitioner is entitled to relief at that point, then the court must hold a hearing and vacate the murder conviction if the prosecution fails to prove that the petitioner is ineligible for relief beyond a reasonable doubt. (§ 1170.95, subd. (d).)

On October 5, 2021, the Governor signed into law Senate Bill No. 775 (2020–2021 Reg. Sess.), which expanded the section 1170.95 petition process to include individuals convicted of "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2.) It became effective January 1, 2022.

## B.    Ortega Is Ineligible for Resentencing of His Murder Conviction as a Matter of Law

Ortega argues that the trial court erred in denying his petition for resentencing of his murder conviction when it determined that he was ineligible for relief because he was the actual killer, citing the jury's verdict and our prior decision in this matter. Ortega claims that to reach this conclusion, the trial court engaged in impermissible fact finding and that it was not entitled to rely on our prior decision for anything but the procedural history of the case. Ortega also asserts that the jury instructions were inconsistent as to whether he or his codefendant was the actual killer, so the trial court could not rely on the record of conviction as a matter of law. We disagree on all accounts.

At the prima facie review stage, the court should deny a section 1170.95 petition if the petitioner is ineligible for relief as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at pp. 970–971; *People*

8

*v. Mancilla* (2021) 67 Cal.App.5th 854, 864–865 (*Mancilla*).) To make this determination, the court looks to the record of conviction: "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) Previous appellate opinions in the same matter are "generally considered to be part of the record of conviction," but the "probative value" is "case specific." (*Id*. at p. 972.) There is nothing in *Lewis* that limits the probative value of previous appellate opinions to the procedural history of a case. (*Ibid*.) Jury instructions are also part of the record of conviction. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.) Courts may also rely on jury verdicts in the prima facie inquiry under section 1170.95. (See *Mancilla, supra*, 67 Cal.App.5th at p. 867.)

At the prima facie stage, the trial court may not engage in factfinding involving the weighing of evidence or the exercise of discretion. (*Lewis, supra*, 11 Cal.5th at p. 972.)

The record of conviction supports the trial court's determination that Ortega is ineligible for relief as to his murder conviction because he was not convicted of felony murder or murder as an aider or abettor under a natural and probable consequences theory. (§ 1170.95, subd. (a)(3).) Instead, the jury explicitly found true that he was the actual murderer, returning a verdict form stating: "JAIME ORTEGA personally and intentionally discharged a firearm, a handgun, which proximately caused great bodily injury and death to ROBERT GARCIA within the meaning of Penal Code Section 12022.53(d) . . . ." A defendant who was convicted based on a record demonstrating that he was the actual killer is ineligible

for resentencing under section 1170.95. (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 (*Cornelius*); accord, *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, disapproved of on other grounds by *Lewis*, *supra*, 11 Cal.5th at p. 962 ["The verdict form contains the jury's finding that Tarkington *personally* used a deadly and dangerous weapon, a knife. In short, the record shows that as a matter of law, Tarkington was the actual killer . . . ."].)  In *Cornelius*, our colleagues in the Second District, Division Six, held that a defendant was not eligible for relief because the jury convicted him of second degree murder and found true that he personally and intentionally used a firearm to commit the crime.  "Thus, the jury implicitly found Cornelius was the 'actual killer,' and the changes to sections 188 and 189 are inapplicable." (*Cornelius*, *supra*, 44 Cal.App.5th at p. 58.)  The same is true here, except that the verdict here was explicit that Ortega used a firearm to kill Garcia.

There is no evidence that the trial court engaged in any impermissible fact finding in reaching its conclusion.  It was entitled to rely on the record of conviction, including the jury's verdict and our previous decision citing this verdict. (*Mancilla*, *supra*, 67 Cal.App.5th at p. 867; *Cornelius*, *supra*, 44 Cal.App.5th at p. 58.)  In citing these parts of the record as the basis for its decision, the trial court did not weigh any evidence nor assess the credibility of any witnesses.

Ortega's claim that the jury instructions were inconsistent, so the trial court could not reach its conclusion without weighing evidence, is without merit.  Ortega argues that "the jury was never instructed to determine whether appellant alone or a principal alone or both personally shot Robert Garcia."  This is not supported by the record.  As detailed above, the trial court

10

instructed the jury specifically as to Ortega alone, and the jury found Ortega used a firearm to shoot Garcia. The trial court also instructed the jury that principals were persons who were involved in committing a crime and included both those who directly committed the crime and who aided and abetted the crime. Thus, there was no inconsistency between the jury instructions stating that it is alleged that a principal intentionally discharged a firearm that proximately caused great bodily injury or death,[4] and the instructions stating that it is alleged that Ortega himself discharged the firearm,[5] because Ortega could be a principal who directly committed the crime.

Ortega's reliance on *People v. Salas* (2001) 89 Cal.App.4th 1275 is misplaced. In *Salas*, as Ortega himself admits, the jury never found that the defendant used the firearm that killed the victim. The jury in *Salas* found that a principal in the crime used a firearm, but never found that the defendant personally used a firearm. (*Id.* at pp. 1278–1279.) Here, the jury explicitly returned a verdict form stating that Ortega used the firearm that killed Garcia.

---

[4] These instructions read: "It is alleged [in Count[s] 2, 3 & 4] that a principal intentionally discharged a firearm [and [proximately] caused [great bodily injury] [or] [death] to a person] . . . ."

[5] These instructions read: "It is alleged [in Count[s] 4] that the defendant[s] Jaime Ortega intentionally and personally discharged a firearm [and [proximately] caused [death] to a person][other than an accomplice] during the commission of the crime[s] charged."

We affirm the denial of Ortega's petition as to the murder conviction because the record of conviction establishes that Ortega is ineligible for relief as a matter of law.

## C. Failure to Provide Counsel Was Harmless Error on the Murder Conviction

Ortega is correct that the trial court erred by denying his resentencing petition at the prima facie stage without appointing counsel. (*Lewis, supra*, 11 Cal.5th at pp. 961–972.) The People agree. The dispute between the parties is whether this error was harmless.

In its recent decision in *Lewis*, the California Supreme Court, resolving a disagreement among the Courts of Appeal, held that once a petitioner files a facially sufficient petition requesting counsel, the trial court must appoint counsel *before performing any prima facie* review under section 1170.95, subdivision (c): "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis, supra*, 11 Cal.5th at p. 963.)

*Lewis* held that failure to provide counsel under subdivision (c) of section 1170.95 is error under state law, and is tested for harmless error under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Lewis, supra*, 11 Cal.5th at pp. 972–974.) Applying *Watson*, reversal is warranted if there is a reasonable probability that Ortega would have obtained a more favorable result had counsel been appointed. (See *Mancilla, supra*, 67 Cal.App.5th at p. 864, citing *Watson, supra*, 46 Cal.2d. at p. 836.)

For there to be a reasonable probability that Ortega could have obtained a more favorable result with counsel, he must be eligible for relief under section 1170.95. As discussed above, Ortega was not eligible for resentencing of his murder conviction under section 1170.95 as a matter of law, so the trial court's failure to appoint counsel was harmless error.

**D.    We Remand for the Trial Court to Address in the First Instance Resentencing of the Attempted Murder Convictions**

The trial court denied Ortega's petition to resentence his attempted murder convictions because the law at the time of his petition did not cover attempted murder convictions. With the amendment to the section 1170.95 petition process to include individuals convicted of attempted murder under the natural and probable consequences doctrine, both parties ask us to reverse and remand for further proceedings as to Ortega's attempted murder convictions. We agree that the new law applies to Ortega because his appeal is not yet final. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1006.) The record reflects, and the People concede, that Ortega may be eligible for relief because the jury was instructed on the natural and probable consequences doctrine for attempted murder.

**DISPOSITION**

The order denying Ortega's motion for resentencing under section 1170.95 is affirmed as to the conviction for murder and remanded for further proceedings as to the convictions for attempted murder.  On remand, the court must appoint counsel under *Lewis*.  (*Lewis, supra*, 11 Cal.5th at p. 963.)

HARUTUNIAN, J.[*]

We concur:

GRIMES, Acting P. J.

WILEY, J.

---

[*]    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.